UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| DELAINA J. PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Robert J. Jonker |
| | ) | |
| v. | ) | Case No. 1:16-cv-01198-RJJ-PJG |
| | ) | |
| COMMISSIONER OF | ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 3, 2013, plaintiff filed her applications for DIB and SSI benefits, alleging an April 9, 2012, onset of disability. (Op. at 1, ECF No. 9-2, PageID.46). Plaintiff's claims were denied on initial review. (*Id*). On January 22, 2015, an Administrative Law Judge (ALJ) conducted a hearing at which plaintiff and a vocational expert testified. (*Id*). The ALJ issued a decision August 13, 2015, finding that plaintiff was not disabled. (*Id*. at 14, PageID.59). On August 11, 2016, the Appeals Council denied review (ECF No. 9-2, PageID.30-32), and the ALJ's decision became the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on five grounds, which she identifies as follows:

> I. ALJ PROTHRO OVERLOOKED A TREATOR'S OPINION
>
> II. ALJ PROTHRO IGNORED SOME IMPAIRMENTS
>
> III. ALJ PROTHRO'S CPP/MENTAL RFC FINDINGS ARE INCONSISTENT
>
> IV. ALJ PROTHRO GAVE INADEQUATE REASONS TO REJECT PLAINTIFF'S COMPLAINTS
>
> V. ALJ PROTHRO GAVE INADEQUATE REASONS TO REJECT THE REPORT OF PLAINTIFF'S BROTHER

(Plf. Brief at 2, ECF No. 14, PageID.612). For the reasons contained herein, I recommend that the Commissioner's decision be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the Court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## The ALJ's Decision

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act through March 31, 2017. (Op. at 3, ECF No. 9-2, PageID.48). Plaintiff had not engaged in substantial gainful activity since April 9, 2012, the date of the alleged onset of disability. (*Id.*). Plaintiff had the following severe impairments: "lumbar degenerative disc disease, status post L3-4 microdisectomy, cervical spine degenerative disc disease, spur, obesity, chronic obstructive pulmonary disease (COPD), tobacco abuse, adjustment disorder, and depression[.]" (Op. at 4, PageID.49). Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work with additional restrictions to include: "occasional climbing and balancing; occasional pushing and pulling with the lower extremities; she must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; and must use a cane for walking; she is limited to performing simple work and no fast paced work." (Op. at 7, PageID.52).

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms associated with her medically determinable impairments were not fully credible. (*Id.* at 10, PageID.55). Plaintiff could not perform any past relevant work as a bowling floor desk clerk, a cashier, a security guard, and a home health aide. (*Id.* at 12-13, PageID.57-58). Plaintiff was 45-years-old as of the date of alleged onset of disability and 49-years-old on the date

4

of the ALJ's decision. Accordingly, she was classified as a younger individual at all times relevant to her claims for DIB and SSI benefits. (*Id*. at 13, PageID.58). Plaintiff has at least a high-school education and is able to communicate in English. (*Id*.).

The ALJ then turned to the testimony of a vocational expert. In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the vocational expert testified that there were jobs that existed in significant numbers in Michigan that the hypothetical person would be capable of performing. These included: assembly positions, machine operator/tender positions, and hand packager positions. (Hrg. Tr. at 48-49, ECF No. 9-2, PageID.112-13). The ALJ found that this constituted a significant number of jobs. (Op. at 13, PageID.58). The ALJ concluded that plaintiff was not under a disability from April 9, 2012, the alleged onset date, to the date of the ALJ's decision. (*Id*. at 14, PageID.59).

## **Discussion**

Plaintiff raises five issues on appeal. I find that the ALJ erred in failing to address an opinion from a treating physician, an error that requires remand. Accordingly, I need not address the remaining issues.

Plaintiff argues that the ALJ ignored the opinion of Christopher Marquart, M.D., who noted on October 31, 2013, that plaintiff should not lift more than ten pounds. (Plf. Brief at 3, ECF No. 14, PageID.613). Plaintiff contends that Dr. Marquart was a treating physician, and accordingly, the ALJ's failure to provide "good reasons" for not incorporating that lifting restriction into his RFC was "per se harmful." (*Id*.).

5

Dr. Marquart is an orthopedic surgeon who, on October 16, 2013, performed surgery on plaintiff's back – a "[l]eft L3-4 lumbar microdiscectomy." (ECF No. 9-7, PageID.440). Plaintiff was referred to him in September 2013 due to the "onset of low back pain radiating down her left leg," which began in March 2013. (*Id.*, PageID.460).

On September 24, 2013, Dr. Marquart examined plaintiff. The doctor noted that this was plaintiff's second visit, the first time relating to a cervical spinal issue in February 2012. (*Id.*). He also noted that she had returned "for continuing follow up" from the treatment he administered in 2012 for her neck pain. (*Id.*, PageID.464). The doctor determined that the "MR study of [plaintiff's] spine demonstrates that she has some degenerative changes in the cervical spine slightly progressed since 2012." (*Id.*, PageID.463). He diagnosed the cause of her leg pain as a "herniated disc on the left at the L3-4 level," which resulted in "nerve root compression." (*Id.*). Dr. Marquart recommended the lumbar microdiscectomy surgery to correct the problem. (*Id.*, PageID.463, 464).

At the time of her surgery, Dr. Marquart noted, among other things, that plaintiff had preoperative pain and muscle weakness that had not improved with "conservative measures." (*Id.*, PageID.440). The doctor also noted that he had advised plaintiff "that most of her chronic back and neck complaints will not improve with this [surgery], it is strictly for the leg pain and weakness." (*Id.*).

On October 31, 2013, plaintiff returned to Dr. Marquart for a post-operative examination. The objective medical findings included "good ROM strength in upper

extremities and right lower extremity . . . [and] some overall decreased strength in her lower extremity 4+/5." (ECF No. 9-7, PageID.456). The doctor noted, among other things, that he had instructed plaintiff to "gradually increase activity as tolerated," and that she had a "[w]eight pound limit of 10 pounds." (*Id.*). He instructed plaintiff to see him again in four weeks "for a repeat check." (*Id.*).

Dr. Marquart next saw plaintiff on December 3, 2013. He noted that plaintiff was "slowly improving," and that she was at the point in which she "need[ed] to undergo some physiotherapy." (ECF No. 9-7, PageID.454). He also noted that the operation "[was] not going to get rid of all [plaintiff's] symptoms." (*Id.*). The doctor did not indicate whether there was any change to the lifting limitations he prescribed on October 31.

Plaintiff returned to see Dr. Marquart on February 11, 2014. He noted that plaintiff was "still having some difficulties with her back and legs; she has restless leg syndrome, she has chronic pain." (ECF No. 9-8, PageID.545). The doctor also noted that plaintiff "[s]till had some mild weakness in her quadriceps muscle, but overall . . . would benefit from physiotherapy reconditioning." (*Id.*). He referred plaintiff to her family medicine group for ongoing pain management due to her difficulties keeping appointments with him. (*Id.*). He did not indicate whether there was any change to the October 31 lifting limitations.

The ALJ reviewed the medical records relating to Dr. Marquart's treatment of plaintiff, including the back surgery. (*See* Op. at 8, PageID.53). The ALJ noted that, while the doctor had indicated post-operative improvement, plaintiff continued to

7

have "some mild weakness in her quadriceps muscles," and that the doctor had recommended continued home exercises and physiotherapy.[1] (*Id.*).

Nowhere in his opinion does the ALJ mention – much less does he analyze – the ten-pound lifting restriction Dr. Marquart imposed on October 31, 2013. The ALJ does not include that restriction in plaintiff's RFC, finding instead that she could perform "light work."[2] (*Id.* at 7, PageID.52). Moreover, the ALJ does not indicate whether he considered Dr. Marquart a treating physician or some other medical source; he does not indicate whether he assigned any weight to the doctor's ten-pound lifting restriction; and he provides no explanation whatsoever as to why he discounted (or ignored) the restriction.

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.' " *Massey v. Commissioner*, 409 F. App'x 917,

---

[1] The ALJ actually used the word "psychotherapy," rather than physiotherapy (Op. at 8, PageID.53), but it is apparent from the context that this was a typographical error.

[2] An RFC of "light work" includes an ability to lift up to twenty pounds. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

8

921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013). Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

9

The Commissioner argues that the ALJ did not err in failing to address the ten-pound lifting restriction because the ALJ "did not consider Dr. Marquart a treating physician," and accordingly, he was not required to evaluate the doctor's statements under the "treating physician" rules. (Comm'r Brief at 5, ECF No. 15, PageID.632). There are two problems with this argument. First, this Court has no way to determine what the ALJ thought of Dr. Marquart's status, as his opinion is silent on the issue. The Commissioner's assertion in this regard is mere speculation.

The second problem is that, having seen plaintiff at least six times – once in 2012,[3] four times in 2013, and once in 2014 – Dr. Marquart likely qualifies as a treating source. *See Smith v. Commissioner*, No. 1:11-cv-351, 2012 WL 1665513, at *14 & n.16 (S.D. Ohio May 11, 2012) (finding that four treatment visits were sufficient to establish a "long-term treatment" relationship triggering the treating physician rule).[4] It was certainly error for the ALJ to fail to address this issue. *See Bastian v. Commissioner*, No. 1:13-cv-666, 2014 WL 5073606, at *5 (W.D. Mich. Oct. 3, 2014) (finding reversible error the ALJ's failure to discuss and explain why

---

[3] The 2012 treatment visit was for a different, but related, impairment involving the cervical spine. Dr. Marquart noted that the September 24, 2013, treatment visit was a "continuing follow up" from his 2012 treatment of plaintiff for her neck pain. (ECF No. 9-7, PageID.464).

[4] As the Commissioner notes (Comm'r Brief at 5, ECF No. 15, PageID.632), in *Helm v. Commissioner*, 405 F. App'x 997, 1000 n.3 (6th Cir. 2011), the Sixth Circuit questioned "whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a nontreating (but examining) source." That decision does not alter my recommendation in this case. First, the Sixth Circuit did not decide the question it raised; and second, the instant case involved twice the number of treatment visits, one of those being surgical intervention.

four progress notes were insufficient to establish a treating physician relationship). As this Court noted in *Bastian*: "[T]he error requiring reversal is the absence of an explanation sufficient to satisfy the procedural 'good reasons' requirement, not the strength of the medical evidence of plaintiff's disability." *Id.*

The Commissioner also offers alternative arguments that Dr. Marquart's ten-pound lifting restriction is not an RFC assessment, but rather, a temporary instruction during post-operative recovery; and that, even if an RFC assessment, it represents "conflicting evidence that the ALJ properly resolved." (Comm'r Brief at 5-6, PageID.632-33). These arguments present *plausible* justifications for discounting Dr. Marquart's lifting restriction. They are unavailing, however, inasmuch as they are mere post-hoc rationalizations. The Commissioner is attempting to do that which the ALJ utterly failed to do. This Court has no way of knowing what the ALJ thought of the lifting restriction or how he may have weighed that evidence against the other record evidence in this case, as he failed to even acknowledge its existence.

The Commissioner's post-hoc justifications are no substitute for the ALJ's obligations to address the issue of whether Dr. Marquart was a treating source and to weigh the doctor's opinions. *See, e.g., Gayheart v. Commissioner*, 710 F.3d at 376-77; *Martin v. Commissioner*, 170 F. App'x at 372; *Bastian v. Commissioner*, 2014 WL 5073606 at *5. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993). The ALJ's failure to follow the procedural requirements for analyzing a likely treating source's medical opinion

11

regarding the claimant's functional restrictions precludes a finding of harmless error. *See Bastian v. Commissioner*, 2014 WL 5073606 at *5.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Respectfully submitted,

Date: November 8, 2017    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).